UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | | |
|---|---|---|---|
| WILLIAM LEE, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. 1:21-cv-00297-SEB-MG | |
| | ) | | |
| BRUCE IPPEL, | ) | | |
| LORETTA DAWSON, | ) | | |
| HOLLY DENMAN, | ) | | |
| | ) | | |
| Defendants. | ) | | |

**Order Granting Defendants' Motion for Summary Judgment**

William Lee is a former inmate at New Castle Correctional Facility. Beginning in 2017, he started experiencing allergic reactions and was eventually diagnosed with chronic hives. Mr. Lee filed this civil rights lawsuit contending several New Castle treatment providers were deliberately indifferent to treating to his medical needs. Defendants now all move for summary judgment. For the reasons that follow, Defendants' motion is **granted**.

**I.**
**Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Mr. Lee's Response Brief, dkt. 63, is signed under the penalties of perjury, and so the Court treats statements made based on personal knowledge as evidence when reciting and applying the facts in this case. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (verified response constituted competent evidence to rebut motion for summary judgment).

2

At all relevant times, Mr. Lee was a prisoner at New Castle Correctional Facility. Dkt. 63, Plaintiff's Response at 1. Defendants Bruce Ippel, Loretta Dawson, and Holly Denman were all medical providers at New Castle. *See* Dkt. 57-1, Affidavit of Bruce Ippel ¶ 2 (physician); Dkt. 57-2, Affidavit of Loretta Dawson ¶ 2 (nurse practitioner); Dkt. 57-3, Affidavit of Holly Denman ¶ 2 (nurse). This case concerns Defendants' treatment of Mr. Lee's chronic hives. *See* Dkt. 1, Complaint.

### A.    Mr. Lee's Treatment in 2017

In early 2017, Mr. Lee began experiencing symptoms of an allergic reaction. Dkt. 57-1 at ¶ 6. On March 9, 2017, he submitted a healthcare request complaining of extreme discomfort due to an allergic reaction. Dkt. 63 at 6. He stated that he was experiencing swollen lips, fingers, feet, face, head, and had "large softball sized" hives all over his body. *Id.*

Mr. Lee was seen six times at nurse visits over the course of the next nine days:

- On March 11, he was seen by Nurse Teresa Allen, and he was given a Benadryl injection pursuant to orders issued by Nurse Practitioner Dawson. Dkt. 57-4, Lee Medical Records at 28 – 29.

- On March 14, he was seen by Nurse Melissa Isaacs. Her note reflects that Mr. Lee believes he was experiencing an allergic reaction to the laundry detergent. He was given a Benadryl injection and returned to the housing unit. *Id.* at 30 – 33.

- On March 15, he was seen by Nurse Linda Keal. He was given a Benadryl injection. *Id.* at 34 – 36.

- On March 16, he was seen by Nurse Lara Conway. At the direction of Dr. Ippel, she administered a Benadryl injection and provided him a short-term dose of Prednisone. *Id.* at 37 – 40.

- On March 18, he was seen by Nurse Isaacs. She administered a Benadryl injection. *Id.* at 41.

- On March 19, he was seen by Nurse Nicole Clayburn. Mr. Lee said the Benadryl injections have been ineffective, but the Prednisone had worked. Dr. Ippel prescribed another short-term dose of Prednisone. *Id.* at 42 – 44.

On March 22, Mr. Lee was then seen by Nurse practitioner Dawson. Dkt. 57-2 at ¶ 7; Dkt. 63 at 6. She noted that there was one small, raised area behind his right shoulder but that his condition had improved. Dkt. 57-4 at 53 – 55. She directed Mr. Lee to use Hydrocortisone—a steroid cream—as needed. *Id.* She also ordered labs for further evaluation, although there is no evidence in the record if these were ever completed. *Id.* Mr. Lee states during this visit Nurse Practitioner Dawson told him that inmates often come to her looking for medication, and that she was going to "stop that behavior[.]" Dkt. 63 at 6. She also told him "since [he was] going to "whine," [to] take [the] hydrocortisone cream and get out of her office." *Id.*

On March 23, Mr. Lee was seen again by Nurse Laura Lawrence. Dkt. 57-4 at 56 – 57. She observed hives on his arms and legs and facial swelling. *Id.* She notified Nurse Practitioner Dawson, but Nurse Practitioner Dawson did not order any new prescriptions. *Id.* Mr. Lee was directed to stay in the medical unit, so his swelling could be monitored, but he voluntarily left without notifying anyone. *Id.*

Mr. Lee's symptoms cleared up in July 2017. Dkt. 57-4 at 14.

**B.     Mr. Lee's Treatment in 2018**

Mr. Lee's symptoms began again in early 2018. On March 5, he contacted Officer Rignor, his dorm officer, seeking medical attention for an allergic reaction consisting of softball sized hives and swollen lips. Dkt. 63 at 6. According to Mr. Lee, Officer Rignor contacted Nurse Denman, and she told Officer Rignor "not to send Lee to medical" and to tell him to "place a hot/cold rag upon the reaction area" until he can be seen in the morning. *Id.* This was apparently done despite Mr. Lee holding a "Benadryl injection card." *Id.* According to Nurse Denman, she "reviewed his medical records and it does not appear [she] had any encounters with Mr. Lee regarding his allergy issues." Dkt. 57-3 at ¶ 6.

4

Mr. Lee was seen by Dr. Ippel two days later on March 7, 2018. Dkt. 57-1 at ¶ 7; Dkt. 57-4 at 14 – 17. Dr. Ippel diagnosed him with immune-related chronic urticaria, or chronic hives. Dkt. 57-1 at ¶ 7. He noted that there was no obvious reason for the starting or stopping of the outbreaks, and Mr. Lee had no history of allergies. *Id.* In most cases, chronic hives resolves itself on its own. *Id.* ¶ 12. Because Mr. Lee seemed to respond to anti-inflammatory and antihistamine medications, Dr. Ippel continued his prescription of Prednisone and started him on a daily dose of Zyrtec (antihistamine). *Id.*

Dr. Ippel next saw Mr. Lee on April 4, 2018 for a follow-up appointment. *Id.* ¶ 8; Dkt. 57-4 at 18 – 20. Dr. Ippel performed lab work; the results were benign. *Id.* Mr. Lee was "fairly comfortable" at that time and did not have any lesions consistent with hives. *Id.*

Mr. Lee was seen again on July 10, 2018 for a chronic care appointment by Nurse Practitioner Dawson. Dkt. 57-2 at ¶ 8. He did not have any complaints related to allergic reactions, and he continued to have active prescriptions for Zyrtec and Prednisone. *Id.*

**C.      Mr. Lee's Treatment in 2019 and 2020**

In early 2019, Zyrtec was removed from the drug formulary. Dkt. 57-1 at ¶ 9. Dr. Ippel, however, submitted formulary exception requests, which permitted Mr. Lee to continue taking Zyrtec. *Id.* at ¶¶ 10, 11.

Nurse Practitioner Dawson saw Mr. Lee on June 5, 2019 for a chronic care appointment. Dkt. 57-2 at ¶ 9; Dkt. 57-4 at 1 – 4. She noted his diagnosis of chronic urticaria but also that he had no symptoms consistent with an allergic reaction. Dkt. 57-2 at ¶ 9.

Mr. Lee submitted a health care request on November 5, 2019 complaining of an allergic outbreak. Dkt. 63 at 6. By this time, Dr. Ippel and Nurse Denman were no longer employed at New Castle. Dkt. 57-1 at ¶ 2 (noting Dr. Ippel's employment terminated as of July 24, 2019); Dkt. 57-3

at ¶ 2 (noting Nurse Denman's employment terminated as of December 17, 2018). The response to Mr. Lee's healthcare request was that he would be referred to the provider, dkt. 1-1 at 13, but there is no evidence Nurse Practitioner Dawson was responsible for treating him or saw him at this time. Nurse Practitioner Dawson left New Castle several weeks later on November 22, 2019. Dkt. 57-2 at ¶ 2.

### III.
### Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Plaintiff "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*. "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to

6

raise the inference that it was not actually based on a medical judgment.'" *Id.* (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id.* at 241-42.

For the purposes of this motion, the Court assumes that Mr. Lee's chronic hives is a serious medical condition.[1] To survive summary judgment, then, Mr. Lee must show that Defendants acted with deliberate indifference—that is, that they consciously disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

### A.    Nurse Denman

Nurse Denman is entitled to summary judgment because there is no evidence she participated in treating Mr. Lee's chronic hives, and even if there was, there is no evidence she was deliberately indifferent.

To be held liable under § 1983, an official must be personally involved in any underlying deprivation. *Johnson v. Rimmer*, 936 F.3d 695, 710 (7th Cir. 2019) ("In an action under § 1983, the plaintiff must establish individual liability . . . [the plaintiff] must be able to establish [the defendant's] personal involvement in the alleged constitutional deprivation."); *see also Estate of*

---

[1] There is an abundance of authority that holds skin conditions are usually not serious medical conditions. *See e.g. Thurmond v. Thomas-Walsh*, No. 18-CV-409-KMK, No. 2019 WL 1429559, at *7 (S.D. N.Y. Mar. 29, 2019) ("[A] skin rash or condition, even one that involves bleeding and scarring, is not a medical condition that gives rise to an Eighth Amendment deliberate indifference claim[.]"); *id.*(collecting cases and finding plaintiff's urticaria was not a serious medical condition); *see also Owen v. Abia*, No. 17-21241-CIV-Gayles, 2017 WL 2822074, at *5 (S.D. Fla. May 30, 2017) ("Courts have consistently held that skin conditions without other symptoms do not qualify as serious medical needs.") (collecting cases). However, Defendants have not taken this position, and on top of that, Mr. Lee asserts he experienced other symptoms in addition to the chronic hives. Dkt. 63-6. Accordingly, the Court assumes his condition satisfies the first prong of a deliberate indifference claim.

*Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017) (granting summary judgment to defendants where there was insufficient evidence they were involved in denying the plaintiff medical care).

Here, there is no evidence Nurse Denman was involved in treating Mr. Lee. The only allegation relating to Nurse Denman is that on March 5, 2018, Mr. Lee asked Officer Rignor to be taken to the medical unit because he of an allergic outbreak. Officer Rignor then reached out to Nurse Denman, and she purportedly told Officer Rignor "not to send Lee to medical" and to tell him to "place a hot/cold rag upon the reaction area" until he can be seen in the morning. Dkt. 63 at 6. However, this statement is inadmissible, either as hearsay since Officer Rignor is not a party in this case, *see* Fed. R. Evid. 801, or as lacking an adequate foundation because there is no evidence explaining how Mr. Lee overheard the discussion between Nurse Denman and Officer Rignor. *See* Fed. R. Evid. 602; *Ani-Deng v. Jeffboat, LLC*, 777 F.3d 452, 454 (7th Cir. 2015) ("A lay witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Even if this statement was admissible, no rational jury could find Nurse Denman was deliberately indifferent because there is no evidence his condition that night required emergency care, and he was seen by Dr. Ippel shortly thereafter on March 7, 2018. *See Corbett v. Perry*, No. 3:18-cv-00103-MOC, No. 2021 WL 3883646, at *8 (W.D. N.C. Aug. 27, 2021) (granting summary judgment to defendant who denied requests for emergency treatment to plaintiff's chronic hives because there was no evidence the plaintiff was in severe pain or required emergency treatment). Accordingly, Defendants' motion for summary judgment with respect to Nurse Denman is **granted**.

### B.      Nurse Practitioner Dawson and Dr. Ippel

Summary judgment is equally appropriate for Nurse Practitioner Dawson and Dr. Ippel because no rational jury could find their treatment amounted to deliberate indifference. Mr. Lee was seen eight times in March 2017, and he received numerous Benadryl injections, two prescriptions of short-term Prednisone, and an order for Hydrocortisone cream. Dkt. 57-4 at 28 – 44. The designated evidence shows his symptoms cleared up in July 2017. Dkt. 57-4 at 14. When they returned in 2018, he was diagnosed with immune-related chronic hives and prescribed Zyrtec and Prednisone. Dkt. 57-1 at ¶ 7; Dkt. 57-4 at 14 – 17. At follow-up appointments in April and July, he did not present with any symptoms, and he continuously had active prescriptions for Zyrtec and Prednisone. Dkt. 57-1 at ¶ 8; *see also id.* at ¶ 9 – 11 (explaining that Dr. Ippel submitted multiple formulary exception requests when Zyrtec was removed from the formulary list). Finally, in June 2019, Nurse Practitioner Dawson saw him and did not observe any hives. Dkt. 57-2 at ¶ 9. In both Dr. Ippel's and Nurse Practitioner Dawson's opinions, Mr. Lee did not need additional medical treatment as chronic hives usually resolves on its own. Dkt. 57-2 at ¶¶ 12, 15; Dkt. 57-3 at ¶ 10.

Based on this record, Mr. Lee has not shown the treatment provided by Dr. Ippel and Nurse Practitioner Dawson was outside the "range of acceptable courses based on prevailing standards in the field[.]" *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019); *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under the circumstances.") (internal quotations and citation omitted). No rational jury could therefore find either one was deliberately indifferent to his chronic hives.

Mr. Lee faults Dr. Ippel for not ordering a RAST[2] test or sending him to a specialist. He states that Dr. Ippel told him a RAST test or a specialist would not be cost effective. Dkt. 63 at 6; dkt. 62 at 2. But in Dr. Ippel's medical opinion, a RAST test would not have been beneficial because Mr. Lee was not able to identify any potential triggers to narrow the testing parameters, and so the chance of finding specific antibodies were slim. *Id.* at ¶ 14. And Dr. Ippel did not believe Mr. Lee required any additional treatment, so a specialist would have been unnecessary. *Id.* at ¶ 10. While Dr. Ippel could have taken these additional steps, his failure to do so does not amount to deliberate indifference given the entire picture of his treatment. *Rasho v. Jeffreys*, 22 F.4th 703, 711 (7th Cir. 2022) ("Prison officials undoubtedly could have done more to address these deficiencies in IDOC's mental health services, but their failure to pursue additional options does not amount to deliberate indifference."); *Zackery v. Mesrobian*, 299 F. App'x 598, 602 (7th Cir. 2008) ("Although it may have been prudent for [the doctor] to order diagnostic testing in 2001, his failure to choose the best course of action does not amount to a constitutional violation.").

Mr. Lee next contends a jury could infer deliberate indifference when Nurse Practitioner Dawson told Mr. Lee that inmates often come to her looking for medication, that she was going to "stop that behavior," and that she gave him hydrocortisone cream only because he was going to "whine." Dkt. 63 at 6. However, by that time, his condition was improving, and she provided him with hydrocortisone cream to help with any additional inflammation. Dkt. 57-4 at 56 – 58. Although her comments may have been "crass and unprofessional," they do not show that her *treatment* amounted to deliberate indifference. *See Ammons v. Altergot*, 968 F.2d 1218, 1992 WL 157551, at *3 (7th Cir. Jul. 8, 1992) (nurse's decision to deny an inmate an injection for his allergies

---

[2] A RAST test can be used to detect specific antibodies in order to determine a person's allergies. Dkt. 57-1 at ¶ 13.

because she believed he was a malingerer may have been crass and unprofessional but was at most negligence and therefore could not support a deliberate indifference claim).

Mr. Lee complains that lab work was supposed to have been ordered in March 2017, but it was not actually completed until April 2018. However, his lab work in 2018 was benign, and he has not submitted evidence that any delay contributed to his injuries. *See Langston v. Peters*, 100 F.3d 1235, 1241 (7th Cir. 1996) ("[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.") (internal quotations and citation omitted), *cited with approval in Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1034 (7th Cir. 2019).

Finally, Mr. Lee argues the Defendants were deliberately indifferent to treating him on November 5, 2019 and October 6, 2020. Dkt. 63 at 6. However, by this time, Dr. Ippel no longer worked at New Castle. Dkt. 57-1 at ¶ 2. Nurse Practitioner Dawson was no longer employed as of November 22, 2019, and there is no evidence Nurse Practitioner Dawson was responsible for treating him or saw him on November 5. Dkt. 57-2 at ¶ 2. Accordingly, there is no evidence that either participated in his treatment at this time. *Johnson*, 936 F.3d at 710.

The Court is sympathetic to Mr. Lee's condition. Mr. Lee had numerous flare-ups that were undoubtedly distressing and uncomfortable, and there were times where Defendants' actions were not perfect. But on this record, however, no rational jury could find that their conduct was "something approaching a total unconcern" for Mr. Lee's chronic hives. *See Rosario v. Brown*, 670 F.3d 816, 822 (7th Cir. 2012). Defendants are therefore entitled to judgment as a matter of law.

**IV.**
**Conclusion**

For those reasons, Defendants' motion for summary judgment, dkt. [55], is **granted**. Final

judgment shall enter accordingly.

**SO ORDERED**.

Date:    9/12/2022

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

WILLIAM LEE
2003 Sweet Blossom Lane
Indianapolis, IN 46229

All Electronically Registered Counsel